Cawley vs. Kelley and husband.

=====

CAWLEY vs. KELLEY and husband.

*March 22 — April 8, 1884.*

*Foreclosure of mortgage: Want of consideration: Estoppel.*

1. As between the original parties to a mortgage want of consideration is a good defense to an action for foreclosure.

2. Upon the evidence in this case (showing among other things that in 1861 the plaintiff executed and had recorded a deed of land to his adopted daughter, as a gift, without her knowledge; that in 1869, at his request and without knowledge of the character of the instruments, she executed to him the note and mortgage of said land in suit, payable in 1870; that afterwards he built a house upon the land, and in 1871 induced her to come with her husband from another city and live upon the premises to make a home for him, upon the assurance that he had conveyed the land to her, she then first learning of said deed; that in 1873 he delivered the deed to her, and that she did not then know of the existence of the note and mortgage) it is *held* that the note and mortgage were without consideration and that the plaintiff is estopped from proceeding in equity to enforce the same.

APPEAL from the Circuit Court for *Racine* County.

The case is thus stated by Mr. Justice CASSODAY:

"This action was commenced November 18, 1881, to foreclose a note and mortgage for $1,800, upon a lot in the city of Racine, alleged to have been executed by the defendant *Mary Kelley*, then *Mary O'Hara*, April 13, 1869, which, by their terms, were due and payable one year after that date, with interest at ten per cent. The defenses to the foreclosure were that they were signed by *Mary* without knowing their character or that the lot had been deeded to her, and without any consideration, and that the plaintiff, by his subse-

quent delivery of the deed and other acts, was estopped from claiming the validity of the note and mortgage; and also that the statute of limitations had run on the note.

"It appears from the undisputed evidence that the plaintiff, who was then married, took *Mary* into his home about 1844, when she was only two or three years of age, to bring up, and that she remained with him until April, 1870, when she was twenty-eight or twenty-nine years of age; that on December 17, 1861, when *Mary* was nineteen or twenty years of age, the plaintiff made a deed of what he supposed to be the lot covered by the mortgage, but by some mistake it was described as being in the wrong block, and that the same was by him recorded December 19, 1861; that after the death of the plaintiff's wife, *Mary* executed the note and mortgage in question; that soon after the plaintiff put a house upon the lot, and otherwise improved the same, at a cost not to exceed $1,000. In April, 1870, *Mary* left the plaintiff's employ, and went to work in Chicago, and in February, 1871, she was married to the other defendant. Soon after her marriage the plaintiff went to Chicago and induced *Mary* to return with her husband to Racine, and live in the house upon the lot in question with the plaintiff, where they have continued to reside since. The plaintiff recorded the mortgage, December 26, 1879, and the note and mortgage were both lost before the commencement of the action. December 10, 1881, the plaintiff delivered to *Mary* a deed of the lot in question, to correct the description in the deed of December 17, 1861.

"On the trial the court found that the note and mortgage were valid; that nothing had been paid thereon; that there was due and unpaid thereon $4,267; and that the plaintiff was entitled to recover the amount from *Mary*, and to a foreclosure and sale of the mortgaged premises."

From the judgment entered accordingly the defendants appealed.

For the appellants there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

For the respondent there was a brief by *Hand & Flett*, and oral argument by *Mr. Hand*. To the point that the note and mortgage both implied consideration, and want of consideration could not be shown for the purpose of destroying the effect and operation of the mortgage, they cited: 1 Jones on Mortg., § 613; 2 Wharton on Ev., §§ 1045, 1056; *Trafton v. Hawes*, 102 Mass., 541; *Grout v. Townsend*, 2 Hill, 554; *M'Crea v. Purmort*, 16 Wend., 460; *Goodwin v. Gilbert*, 9 Mass., 510; *Beach v. Packard*, 10 Vt., 96; *Whiting v. Gould*, 2 Wis., 552; *Croft v. Bunster*, 9 id., 503. As between the mortgagor and mortgagee no consideration was necessary. 1 Jones on Mortg., § 614; *Brooks v. Dalrymple*, 12 Allen, 102; *Croft v. Bunster*, 9 Wis., 503. And the party setting up want or failure of consideration must establish it by clear and strong proof. 1 Jones on Mortg., § 622; *Stuart v. Phelps*, 39 Iowa, 14; *Brigham v. Potter*, 14 Gray, 522.

CASSODAY, J. The numerous contradictions in the plaintiff's testimony seem to indicate that at the time of the trial he was pretty old and his memory badly impaired. These things being so, it would be improper to rely upon it when in conflict with other evidence. Prior to *Mary's* departure for Chicago, he had for more than a quarter of a century stood *in loco parentis* to her. Received into his household at such an early period, it may well be presumed that his affection for her became tender and genuine. This is manifest by his executing the deed of the lot in her favor when she was about nineteen years of age. This was evidently intended by him as a voluntary gift, for he tells us that neither *Mary* nor his wife knew anything about it until after he had made and recorded it. The fact that his wife did not sign it, nor know of its being made until after it

was recorded, seems to indicate that for some reason he did not want her to know it. *Mary* testified, in effect, that she never knew anything about his making the deed until he told her of it in Chicago in the spring of 1871, as an inducement to get her to return; and that she never saw the deed until the plaintiff brought it from the register's office and gave it to her, in 1873. That the plaintiff gave the deed to her at that time is conclusively proved by the additional testimony of *Mary's* husband and the records of the register's office showing that the deed had been in that office from December 19, 1861, to March 5, 1873, when it was taken therefrom by the plaintiff. True, the plaintiff testified, in effect, that he told her of the deed shortly after making it; that some years before she went to Chicago he told her he had the lot signed over to her, *and gave her the deed*. In another part of his testimony, however, he was asked: "Did you ever mention this deed to her until you spoke to her about it in Chicago? *Answer.* No, sir; no, I didn't mention it." With these conflicting statements, and the testimony of *Mary* and her husband, corroborated by the evidence from the register's office, we must hold, as a matter of fact, that *Mary* never knew anything about that deed until the plaintiff told her of it in Chicago in the spring of 1871; and that she never saw it until he brought it from the register's office and gave it to her in March, 1873. We must, moreover, hold, as a matter of fact, that *Mary* and her husband were induced to move from Chicago upon the lot in question, upon the plaintiff's assurance that he had given her a deed of it, and that the deed was then in the register's office; and that *Mary* did not then know that she had signed the note and mortgage in question. It is very evident, however, that she had signed the mortgage and possibly the note, for she admits that about that time she signed a long paper at the request of the plaintiff, but claims that she did not know what it was.

At the time of signing the mortgage the lot was vacant. It could not then have been of much value, for the testimony indicates that, with the house and all the improvements subsequently put on, it was only worth about $1,000. There is no claim that *Mary* was indebted to the plaintiff for anything at the time the note and mortgage were executed. On the contrary, the inferences are the other way, for *Mary* had then worked for the plaintiff seven or eight years after she became twenty-one years of age, to say nothing about the time prior to that. She was at the time working for wages, keeping house for the plaintiff, whose wife was then dead. The plaintiff testified that he went to Chicago to pay her the balance of what he owed her, and did then pay her $30. Assuming that *Mary* executed the note and mortgage, we must, nevertheless, hold that they were given without any consideration whatever.

As between the original parties, a want of any consideration is certainly a good defense. 2 Jones on Mortg., §§ 1297, 1490. The only consideration claimed is that, during the year following the execution of the note and mortgage, the plaintiff built the house and made the improvements upon the lot stated. But there is no evidence that any of those things were done in pursuance of any contract, arrangement, or understanding with *Mary*. A mortgage is only an incident to a debt, which is the principal thing. It is merely security for the debt. Where there is no debt — no relation of debtor and creditor — there can be no mortgage. Here there was no debt, and hence no mortgage that can be enforced in equity. If the mortgage could be sustained upon any theory, it could only be as a security for future advances, and then only to the extent of such advances. 1 Jones on Mortg., § 378. But the evidence fails to show that it was ever given for such a purpose, or that any advances were ever made in pursuance of any agreement or understanding with *Mary*. The mortgage was

never put on record until December 26, 1879. By its terms it was due April 13, 1870, and yet there is nothing indicating that any payment was ever made, or exacted, or talked about, until about the time of the commencement of this action, but on the contrary the plaintiff testified that he went to Chicago to pay his indebtedness to *Mary* in the spring of 1871. The relation of the parties and the circumstances of the case seem to indicate that the plaintiff, knowing that he had given the deed, obtained the signature of *Mary*, with the view of using it or not as he might subsequently be advised.

On the whole evidence we must hold that, the defendants having moved from Chicago upon the lot to make a home for the plaintiff, as they did, upon the promise that he had given *Mary* a deed of the lot, which was then in the register's office, and he having delivered the deed in question in March, 1873, and the note and mortgage having been given without any consideration whatever, they must be held to be inoperative as against *Mary* or the premises, and that the plaintiff is estopped from proceeding in equity to enforce the same.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.