Magie v. Reynolds.

---

ABBIE M. MAGIE

v.

EDWARD M. REYNOLDS and wife, BENJAMIN G. BLOSS, and FRANCES E. DAY and husband.

1. A mortgage is a mere incident to the debt which it is given to secure, and stands or falls with it.

2. An assignee for value, of a mortgage, by deed of assignment, in form a conveyance of land, does not thereby attain the position of a purchaser for

value without notice, but takes subject to all defences which the mortgagor or his grantor has to the debt which the mortgage is given to secure.

3. A mere failure of the obligor and mortgagor to take proceedings to procure the discharge of record and delivery up of a mortgage, to which he has a valid defence, does not estop him from setting up such defence against an assignee for value without notice.

4. It is the duty of a person about to take the assignment of a bond and mortgage to inquire of the obligor and mortgagor as to his liability thereon.

5. The third section of the act of February 25th, 1880 (*P. L. p. 53*), has no application to a mortgage to which the obligor and mortgagor has a valid defence, and does not have the effect of giving the assignee of such a mortgage the position of a purchaser for value of lands.

6. The owner of land, upon which he had recently executed a mortgage, obtained from him by a fraud not yet discovered, conveyed a portion of it without consideration to a corporation, of which he was the principal stockholder, by a deed which stated merely that it was conveyed subject to the mortgage, and did not assume it.—*Held*, in a suit to foreclose the mortgage, that the corporation was not estopped from setting up the same defence which the mortgagor had.

7. In such case, the right of the mortgagee or his assignee to call on the grantee of a part of the mortgaged premises to pay the mortgage is no greater than that of the mortgagor.

Final hearing on pleadings and proofs produced orally in court.

*Mr. Edward S. Atwater*, for the complainant.

*Mr. William B. Guild*, for Bloss.

*Messrs. Campbell & De Baun*, for Reynolds and wife.

*Mr. C. W. Berdan*, for Mrs. Day.

PITNEY, V. C.

This is, in form, a bill to foreclose a mortgage. The mortgagors, Reynolds and wife, set up fraud in its procurement, and by cross-bill ask that it be delivered up to be canceled.

The ultimate question in the cause is, which of two innocent parties—the complainant on the one side, or Reynolds and his

wife on the other—shall suffer by the fraudulent practices of a third party?

The mortgage sought to be foreclosed was executed by the defendants Reynolds and wife to Emma A. Sumner, the wife of Perrin H. Sumner, on the 2d of January, 1889; it was assigned by Mrs. Sumner to the defendant Benjamin G. Bloss on the 18th of December, 1889, and again, by Bloss, to the complainant on the 15th of March, 1890.

The mortgage covers a small farm and dwelling situate at Maywood, near Hackensack, Bergen county, New Jersey.

The particulars of the fraud set up in the answer and cross-bill are as follows: That Reynolds was the owner of the farm above mentioned, upon which there was an undeveloped brown-stone quarry, and, being desirous to have it developed, he applied to Sumner to assist him therein, and that Sumner undertook to do so, but that he required some security to be given to investors whom he might interest in it that it would turn out, upon experiment, that there was a sufficient quantity of marketable stone upon the premises, and for that purpose induced the defendants to execute the bond and mortgage in question; and they allege that in point of fact they received no consideration whatever for the mortgage, except as follows: that Sumner, upon their objecting to giving a mortgage under the circumstances and for the purpose just stated, proposed to give them a counter indemnity in the shape of a one-tenth interest in a farm containing five hundred and twenty-five acres, situate at Manor, in Suffolk county, Long Island, which Sumner then pretended to own, and stated to them that it was worth $50,000, and that, relying upon the representations, statements, and promises of Sumner, they took a deed from Sumner for a one-tenth interest in the said tract of land; that afterwards Sumner informed them that he had agreed to sell his interest in the farm to Bloss, and that, in order to enable him to make a conveyance, it was necessary that the defendants should return to him, Sumner, the deed which they had received from him, which had not been recorded, and that for such surrender Sumner would give them a consideration in valuable gold mining stock, from which could at once be

realized a sum sufficient to operate the quarry.    Believing these
representations, they surrendered the deed to Sumner, and there-
upon received a quantity of gold mining stock ; and by way of
making them believe that the stock was valuable, Bloss loaned
them $50 on a promissory note of Reynolds, and took as collat-
eral one of the certificates of stock, representing twenty-five
shares of the stock in a gold mine ; that the said shares of stock
turned out to be utterly valueless, and that Sumner promised to
return the bond and mortgage and deliver it up to be canceled.

The replication to this cross-bill sets up that the mortgage
was given for a full consideration, namely, the conveyance of the
interest in the Long Island farm, and denies the allegations that
the mortgage and conveyance were made by way of indemnity
and counter indemnity.

[Here follows a discussion of the facts.]

Without going through the details of the various interviews
between Captain Reynolds and wife and Sumner and Bloss, I
am satisfied that the mortgage was procured by fraud, without
any consideration, unless the shares of mining stock may be so
held, and that Bloss' connection with the affair was entirely in
the interest of Sumner, he lending himself to Sumner to aid him
in defrauding Reynolds and wife, and that he never had any
interest in the bond and mortgage ; so that if either Mrs. Sumner
or Bloss were complainants in the cause, the result would not be
open to a moment's doubt.

The well-settled rule in this state, as well as in other equitable
jurisdictions, is that an assignee of a bond and mortgage takes
it subject to all the equitable defences which the original obligors
and mortgagors have thereto.    This is so at law as well as in
equity.    It was so held at law in an action on a bond, in *Bar-
row* v. *Bispham, 6 Halst. 131,* after an elaborate consideration
of the authorities.    And the same doctrine was held in equity
by Chancellor Vroom, in *Shannon* v. *Marselis, Saxt. 413.*
At *p. 424* the chancellor examines the authorities in England
and New York, and quotes with approbation the language of
Chancellor Kent, in which he states that it is the duty of the
assignee to make inquiries of the obligor or mortgagor or person

owning the equity of redemption before taking an assignment of the bond and mortgage. And see the remarks of the Lord Chancellor, in *Matthew* v. *Wallwyn, 4 Ves. 118* (at *p. 127*).

This ruling was followed in *Jaques* v. *Esler, 3 Gr. Ch. 461*, by Chancellor Haines, and by Chancellor Green in *Woodruff* v. *Depue, 1 McCart. 168*, and by Chancellor Zabriskie in *Conover* v. *Vanmater, 3 C. E. Gr. 481*, and again, by the same judge, in *Coursen* v. *Canfield, 6 C. E. Gr. 92*, and has never been questioned or doubted, and finally has the approval of the court of errors and appeals in *Atwater* v. *Underhill, 7 C. E. Gr. 599* (at *p. 606*).

The principle underlying this rule is that the mortgage is a mere incident of the debt which it is intended to secure, and a defence to the debt is a defence to the mortgage. If the mortgage is given to secure a negotiable promissory note, and the note is negotiated for value in the ordinary way before maturity, the holder will hold it and the mortgage free from all defences. *2 Jones Mort.* § *1487*, and cases there cited. But if the mortgage be given to secure a non-negotiable instrument, the assignee takes it subject to all defences to the bond or other instrument manifesting the indebtedness.

In this aspect the assignment of a mortgage, though it assume, as it usually does, the form of a conveyance of land, differs from an ordinary conveyance in which the grantor for value takes the title free from all prior conveyances and equities of which he has no actual or constructive notice. *Carpenter* v. *Longan, 16 Wall. 271* (at *p. 275*); *Matthew* v. *Wallwyn, 4 Ves. 118* (at *p. 129*); *Coote Mort.* *301 et seq.

A mortgagor and obligor may, however, so conduct himself as to mislead a proposed assignee, and estop himself from setting up his defence; and I have looked with care into this case to see if I could find anything in the conduct of Mr. and Mrs. Reynolds which would estop them as against Mrs. Magie. It is true that Bloss swears that shortly before he took the assignment from Mrs. Sumner he talked with Mr. and Mrs. Reynolds about this mortgage, and they declared it was a good mortgage, and seemed anxious that he should take it, and advance the

money upon it, and it is evident from his evidence, if truthful, that they at that time expected that, if Bloss did advance the money upon it, they would get it; and if he had done so, upon the hypothesis that his evidence is true, the mortgage would have been a valid security in his hands. But I am not satisfied that Bloss ever advanced anything at all upon the mortgage to Sumner or his wife, and the undoubted fact is that if he did so he had been repaid all that he advanced prior to the date of the transfer to Mrs. Magie, because, as before remarked, Sumner or his wife was the undoubted owner of the mortgage at that time, and received from Mrs. Magie the consideration for its assignment. Bloss assigned it at their request, and for their benefit, and at that time claimed no interest in it.

No interest was ever paid on the mortgage, nor is there any endorsement of interest upon it. So that the complainant was not misled by anything of that sort; and, as before observed, she made no inquiries with regard to it from either Reynolds or his wife or anybody representing them.

Two matters have been put forward as furnishing some ground for an estoppel. One is a contract entered into between a man by the name of Randall and Mr. and Mrs. Reynolds on the 10th of October, 1889, in which Reynolds and wife agreed to exchange with Randall ten thousand shares of stock in the Maywood Brownstone Quarrying Company (which had been organized for the purpose of developing the stone quarry) for a lot of land in Norwalk, Connecticut, owned by Randall, and in that contract there is a statement that the property of the quarrying company consisted of about sixteen acres of land underlaid with brownstone, "subject to a mortgage of $5,000, with interest at five per cent. per annum." This clause in this contract is relied upon as a recognition by Reynolds and wife of this mortgage; but it does not appear that Mrs. Magie ever saw it, or in any wise relied upon it.

Then, again, there is produced a deed dated the 20th of February, 1889, made very shortly after the execution of this mortgage, by Reynolds and wife to the stone quarry company of a part of the mortgaged premises, said to contain about seventeen

acres of land, and which was duly recorded, and in that deed is this clause: "Subject to one mortgage now on the said premises, given to secure the payment of $5,000 and interest thereon."

The reference to a mortgage, like that in the contract to Randall, does not identify it, and it does not appear in this case that either Mrs. Magie or her agent ever saw or relied upon that deed in any way.

The only fact which has at any time struck me as affording the least ground of estoppel is the forbearance of Reynolds and wife to take any steps to have this mortgage canceled and removed. It will be observed that it was made and executed on the 2d of January, 1889; that it was assigned by Sumner to Bloss on the 18th of December, 1889, and that this assignment was recorded on the 1st of February, 1890, and that it was assigned by Bloss to Mrs. Magie on the 15th of March, 1890. When asked upon the stand why they had allowed the matter to remain so long, Reynolds and wife said that they were at all times poor; that at first they had confidence in Sumner, then they began to lose confidence, and asked him to return the mortgage, and that he promised from time to time to do so, and that they relied upon his promises, and then that they consulted counsel in New York, who promised to do something for them but was taken sick and died, and that in the meantime they were in hopes of managing to get the mortgage out of his hands by friendly negotiations, and that finally they put the matter into the hands of Mr. Campbell, their counsel in Hackensack, who, for some undisclosed reason, did nothing until the bill to foreclose was filed in this cause.

But upon full consideration I have come to the conclusion that it was not the duty of Mr. and Mrs. Reynolds to commence suit to have this mortgage canceled, and that their not doing so forms no ground of estoppel. They had a right to rely upon the well-settled rule of law that the purchaser of a chose in action of this character takes it subject to all equities, and that he has the power to protect himself by making inquiries at the proper sources; and therefore they are entitled to a decree that the complainant's bill be dismissed as to them, and that they

are entitled to have the bond and mortgage delivered up to be canceled.

This result renders it unnecessary to determine the question arising as against Mrs. Day, who, in the summer of 1889, purchased a small piece of this farm from Mr. and Mrs. Reynolds, and entered into immediate possession of it. Reynolds procured from Sumner a release of this lot, which he handed to Mrs. Day with her deed. It was executed before the assignment from Sumner and wife to Bloss. Mrs. Day, however, failed to get it recorded until this bill was filed.

I am referred on this part of the case to the act of February 25th, 1880. *P. L. p. 53 ; Rev. Sup. p. 134 §§ 14, 15, 16.* The third section of that act provides—

"That when any such release, or deed intended to operate as a release, made and executed after this act shall take effect, is not recorded, or when in such release or deed the intention to operate as a release shall not be plainly manifest, * * * as in this act provided, any payment made, in good faith and without actual notice of such release or deed, to the holder of any mortgage or judgment, from the lien and effect of which any lands may be thereby released, *and any assignment of such mortgage or judgment,* or of any interest therein, *to any person not having actual notice of such release or deed, shall be as valid and effectual as if said release or deed had not been made;* and any lands released from the lien and effect of any mortgage or judgment by any such release or deed not recorded, shall be bound by any proceedings and sale under and by virtue of such mortgage or judgment, as if the said lands had not been released from the lien and effect thereof."

If I had come to a different conclusion as to the validity of the mortgage in complainant's hands, the act would have given rise to a serious question. But the statute clearly deals with a valid mortgage upon which something is due, and cannot be used to give life to a mortgage upon which nothing is due, by investing the assignee with the protection of the position of a *bona fide* purchaser of land for value.

It was further urged that the brownstone quarrying company is not in a situation to take advantage of the defence set up by Reynolds and wife.

As a part of the plan for developing the brownstone quarry, a company, which had been previously organized by Captain

Reynolds for that purpose, was given life by the election of officers &c., of which Mr. Reynolds was one and Sumner was another, and a friend of Sumner was a third, and a conveyance was made, as above stated, to this corporation of a portion of the mortgaged premises. That deed was dated the 20th of February, 1889, and is without any consideration mentioned in it whatever, and contained the clause hereinbefore recited. It does not identify the mortgage, and it does not declare that the amount due on the mortgage is taken as part of the consideration money, and the proof fails to show any arrangement to that effect. At that time Reynolds owned the whole stock, except a few shares transferred to Sumner for aiding in its organization. The conveyance was made without any consideration in fact, was so understood at the time, and there could be, of course, no understanding at the time that the amount of $5,000, mentioned in the mortgage, was taken as a part of the consideration money, or that that amount was to be paid by the quarry company. As the conveyance was for only a portion of the land covered by the mortgage, the presumption, in the absence of any facts or expression showing a contrary intent, would be that the understanding between the parties was that the mortgaged premises were to bear the burden of the mortgage in the inverse order of their conveyance, and that the portion of the premises not included in the conveyance to the quarry company should be sold first to pay the mortgage. *Gray* v. *Hattersley, 5 Dick. Ch. Rep. 206.* And I think that the reference to the mortgage in the deed does not have the effect of casting the burden of it upon the premises conveyed, but may be accounted for by the fact that the conveyance contains full covenants of seizin and warranty. No doubt the object of its insertion in the deed, which is in the handwriting of Sumner, was to fortify his position as holder of the mortgage.

But the question here does not arise between the grantor and grantee of a part of the mortgaged premises, as to which part shall bear the burden of the mortgage—a question in which the mortgagee or his assignee is usually not interested—but it arises between the grantee of a part of the mortgaged premises and the

holder of the mortgage, and is essentially a different question from the other.

No doubt, if a grantee of a portion of premises subject to a mortgage assumes the payment of a certain sum—the whole or a part of the sum due on the mortgage—such assumption being in payment, in whole or in part, as the case may be, of the purchase price which he agrees to pay his grantor, such purchaser is ordinarily estopped from setting up any defence against the mortgage so assumed, and the reason is that he has the money in his hands to pay it.

I say "ordinarily," because it seems to me that this general rule must be subject to a notable exception. The assumption is a matter of convention between the grantor and grantee, and the right to enforce it rests primarily in the former, and where it has been enforced in favor of the holder of the mortgage, it has been done upon the principle that the holder of the mortgage is subrogated to the rights of the grantor in that behalf.

In the case in hand, if the complainant's mortgage received additional validity by reason of the conveyance by the mortgagors, Reynolds and wife, to the quarry company, such addition comes to it through subrogation to the right of the mortgagors under their contract with the quarry company. In order to derive a benefit from that transaction, the holder of the mortgage cannot thrust upon the mortgagors and grantors the benefit of a right which they do not and never did claim. The mode in which the mortgagor and grantor in such cases is benefited, is by having the whole or a part of the purchase-money devoted to the payment of his debt, and by the relief of his other property from the lien of the mortgage; and if, before any payment is made by the grantor to the holder of the mortgage, the grantor and mortgagor himself is forced to pay it, or does it voluntarily, as he may well do, a right would at once arise to him to call on the grantee to pay the amount to him instead of to the holder of the mortgage. In so doing he would be demanding only what was originally his own.

It seems to me to follow that if, before any payment by the grantee to the holder of the mortgage, the grantor discovers that

neither he nor his land is liable to pay anything whatever to the holder of the mortgage, he may rescind his contract with the grantee, and countermand, so to speak, his direction to him to make payment to the holder of the mortgage, and release him from his obligation in that behalf. This view is not, as I think, in conflict with the decisions upon this topic. *Horton* v. *Davis, 26 N. Y. 495* ; *Freeman* v. *Auld, 44 N. Y. 50* ; *Ritter* v. *Phillips, 53 N. Y. 586* ; *Crowell* v. *Hospital, 12 C. E. Gr. 650* ; *Brolasky* v. *Miller, 1 Stock. 807* ; *Van Winkle* v. *Earl, 11 C. E. Gr. 242.*

The quarry company did not answer the complainant's bill, but no decree has been entered against it.

Upon the whole case I am of the opinion that the mortgage is not a valid lien upon any of the property, and that it must be delivered up to be canceled.

The assignment from Bloss to the complainant contains a guarantee by Bloss that the amount of $3,042.74 is due and owing upon the mortgage, in these words:

"I do hereby covenant and agree to and with the party of the second part that there is now due" &c.; "and I do for myself, my heirs, executors, and administrators to and with the said party of the second part, her heirs, executors, administrators, and assigns guarantee the payment of the said bond and mortgage."

That guarantee is set out in the bill. And, in addition to the ordinary prayer found in a foreclosure bill, there is a prayer for further and other relief. The prayer for foreclosure is in these words:

"And that the said defendants, or some one of them, may be decreed to pay to your oratrix the said principal sums so due to her on the said bond or obligation and deed of mortgage hereinbefore mentioned and set forth, and all the interest money now due and to grow due thereon, together with all your oratrix's costs and charges in this behalf sustained, by a short day, to be appointed and in default" &c.

It was contended by the counsel for complainant that this prayer was sufficient to entitle the complainant to a decree against Bloss, but if the court should be of opinion that it was not sufficient, he moved that he might be permitted to amend, and such

a motion was made in the presence and with the consent of the counsel of Bloss. I think that it will be in accordance with good pleading that there should be an amendment containing a special prayer for payment by Bloss, and, after such prayer has been inserted, the complainant may have a decree for payment by Bloss, and a reference to a master to ascertain the amount due, if the parties cannot agree.

The defendants Reynolds and wife are entitled to costs against the complainant. There will be no costs in favor of Day and wife, because they failed to put their release on record.

Complainant is entitled to costs against Bloss, to include the costs of Reynolds and wife.