72 So.2d 289 (1954)
ROSENTHAL et ux.
v.
LE MAY et ux.
Supreme Court of Florida. Special Division B.
March 12, 1954.
Rehearing Denied May 19, 1954.
*290 Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellants.
Ralph A. Marsicano and William R. McCown, Tampa, for appellees.
DREW, Justice.
The parties to this appeal will be referred to as plaintiffs and defendants as they appeared in the court below. On or about March 22, 1950, the plaintiffs, husband and wife, delivered to the defendant, J.D. Rosenthal, a warranty deed conveying their undivided one-half interest in certain business property in Tampa, Florida, known as the Allied Building. This deed conveyed the described realty free and clear except for a mortgage thereon existing since 1945. As a part of the same transaction the grantee, J.D. Rosenthal, and the grantors, Philip LeMay and his wife, Violet, signed an instrument entitled, "Option for Sale of Real Estate", in which the plaintiff Philip LeMay was granted an option to repurchase the same realty described in the deed and the option. Omitting formal parts such instrument is as follows:
"In consideration of $10.00 and other valuable consideration receipt of which is hereby acknowledged, J.D. Rosenthal, as party of the first part agrees to give to Philip LeMay, as party of the second part, an option to buy as of April 1, 1952 a one-half undivided interest in the following described real property situated in Hillsborough County, Florida:
"Lots 1, 3 and 4, Block 19, General Map of Tampa, according to map or plate thereof recorded in Plat Book 1, page 7, of the public records of Hillsborough County, Florida.
"Said option can be exercised only by delivering to the party of the first part at 5105 Florida Avenue, Tampa, Florida, the sum of $29,800.00, in cash on April 1, 1952. This option is personal to the party of the second part and is not assignable, transferable or alienable, voluntarily or involuntary, inter vivos or testamentary. If not so exercised by the party of the second part, on that date, this option will thereafter be null and void and the party of the second part will have no further rights or interest in or claim upon the property.
"It is distinctly and fully understood and agreed that there is no indebtedness between the parties at this time and this transaction is not intended or to be construed as a mortgage, trust conveyance, or security of any kind.
"It is further understood and agreed that this option is conditioned upon the party *291 of the second part retaining the property, for a period of not less than two years, and that party of the second part will not convey, alienate or transfer the same in any way prior to April 1, 1954 with [sic] party of the first part's written consent first obtained, and that thereafter party of the second part will not do so without first offering it to the party of the first part upon the same price, terms and conditions as any other person who is ready, willing and able."
In March, 1945, plaintiff husband and the defendant husband had acquired the subject property as tenants in common. Thereafter they had controlled the operation of the property, each receiving one-half the net profits thereof, with J.D. Rosenthal being the active manager.
Early in 1950 the plaintiff husband became financially involved. Among other things, a judgment for nearly $39,000 and later another for about $3,000 were entered against him. Pursuant to the larger judgment, levy was made on his undivided one-half interest in the Allied Building. In order to extricate himself plaintiff sought from defendant Rosenthal a loan to pay his creditors. Rosenthal insisted that he did not want to make a loan to plaintiff. On the other hand, the record is clear that Rosenthal did not want third parties to be involved in the interest of LeMay in the property and through subsequent negotiations extending over some time the above transaction was effected and the foregoing instruments executed and delivered.
The deed and the "option" were prepared by reputable and reliable attorneys for defendants. Plaintiffs were likewise represented by able counsel. At the time of the transaction the value of plaintiffs' undivided one-half interest in the subject property was more than $100,000. Out of the transaction the plaintiffs received from defendant Rosenthal $40,000 in cash used largely to pay creditors. The $29,800 option repurchase figure was arrived at by crediting plaintiff for two years' estimated net rents in the amount of $15,000, less allowance to Rosenthal of equivalent of interest on $40,000 for two years at the rate of 6% per annum or $4,800, with the net credit of $10,200 being deducted from the $40,000.
In order to obtain funds to exercise the option on April 1, 1952, plaintiff husband arranged to obtain a bank loan and gave as security, among other things, a mortgage on an undivided one-half interest in the subject property. On the date specified in the option, plaintiff husband tendered to defendant J.D. Rosenthal $29,800 pursuant to the option terms. At this time Rosenthal had in his possession a warranty deed to an undivided one-half interest in the property properly signed and acknowledged by Rosenthal and his wife; however, Rosenthal refused to deliver the deed and refused to perform the option on the grounds that plaintiff, by arranging to mortgage the property violated the provisions in the option which provided that he would not "convey, alienate or transfer the same in any way prior to April 1, 1954 * * *" (emphasis added) insisting that the word "alienate" was broad enough to include "mortgage."
Thereafter plaintiffs brought action to have their deed to the property to defendant husband declared to be a mortgage or, in the alternative, to require defendants specifically to perform the option agreement by conveying the property to plaintiffs, and for an accounting of rents and profits. Defendants answered that the deed was not a mortgage and that performance of the option was excused because it was conditioned on plaintiffs not alienating an interest in the property which they had breached by executing a mortgage thereon.
On the issues thus made, after testimony taken in open court before the eminent Chancellor, he found that the deed in question was "in truth and in fact a mortgage given to secure the sum of $40,000.00, with interest from date, at the rate of 6% per annum" and that the plaintiffs were entitled "to redeem the same" and "to an accounting of the rents, issues and profits from the said premises commencing with March 22, 1950." Defendants appealed from this decree, asserting that the court erred in holding *292 the deed to be a mortgage. They insist that it was a sale conditioned upon the plaintiff husband's right to repurchase according to the terms of the option and that, for the reasons stated above, he had failed to abide by those terms thereby excusing performance by defendants.
Whether a transaction is in fact a sale or a mortgage depends upon the intention of both parties as shown by all the surrounding circumstances. Holmberg v. Hardee, 90 Fla. 787, 108 So. 211. In making this determination the attitude of the parties relative to the conveyance after its execution may be considered, Holmberg v. Hardee, supra, and an express writing that a transaction is a sale is not controlling unless consistent with the entire picture. Compare Connor v. Connor, 59 Fla. 467, 52 So. 727, where we held a deed to be a mortgage notwithstanding express writings otherwise, with Brumick v. Morris, 131 Fla. 46, 178 So. 564, where we held the transaction a sale in accordance with language of written instruments. Inadequacy of price also may be considered but the presence of that factor does not per se constitute a ground to avoid the transaction. Chaires v. Brady, 10 Fla. 133. An owner has a right to make a conditional sale at a reduced price and where his intention to do that is clear such action is binding upon him. See Brumick v. Morris, supra.
In the light of these cases and the general principles involved, we have carefully examined the record. The defendants firmly assert that a conditional sale and nothing else was intended by the parties. In this connection the testimony of plaintiff wife is not enlightening since it shows only that she did not participate in the negotiations but merely followed the directions of her husband. His testimony, we believe, leads irresistibly to the conclusion that at the time the transaction was closed and the money passed he fully intended to effect a sale, subject only to the written right to repurchase, and intended the instruments signed to have only this effect. For instance, on cross-examination in response to a question about whether he knew the Rosenthals did not want to lend him money, he stated:
"I can't agree with you. I took the chance of taking that money from them, and if I don't buy it back, as they term it, I stood to lose what I had in it, because I could get a substantial amount more than they offered me but that was the end of it. I gave it up completely. This option was the only thing that protected me. If they hadn't given me that option I never would have gone into it." (Emphasis supplied.)
In addition he testified that in this litigation all he claimed to be entitled to was one-half interest in the subject property plus one-half of the net rents on hand at the time the deal was closed (March, 1950), and asserted that his attorney told him he was "foolish to sell" the building but that he did so anyway because "I had an option to buy it back." We think this testimony of the plaintiff husband, together with all the circumstances revealed by the record, requires the conclusion that the lower court misconstrued the legal effect of the evidence as a whole and that at the time of the transaction both of the parties intended to effect a conditional sale and that the deed delivered to defendant husband was in fact a conveyance of legal title subject to the right of repurchase as set out in the option simultaneously executed as a part of the same transaction.
We now turn to the question of whether plaintiffs properly exercised the option agreement.
Among other things this instrument provided that the plaintiff husband optionee had a right to reacquire the subject property but "only by delivering to the party of the first part [defendant husband] at 5105 Florida Avenue, Tampa, Florida, the sum of $29,800.00, in cash on April 1, 1952." It is not disputed that the optionee made a proper tender on the stated date. Defendants contend only that performance of the option was excused and in support thereof they rely upon the paragraph four of the *293 option. They assert that plaintiffs did in fact prior to April 1, 1952, mortgage the subject property and therefore by such action the optionee did "alienate" the property contrary to the provision of said paragraph four, thereby relieving defendant optionee of the duty of performance.
We do not find merit in this contention. Aside from the more subtle aspects of the theory urged in its support, the contention is not supported by the language of the instrument itself. A reading of the language of paragraph four as a whole shows that it pertains to a sale of the property in the ordinary sense of transfer of title. To that end it sets up requirements pertaining to resale by plaintiff in the event of his acquisition of the property under the option. In that connection the option refers to offering the property to the other party (Rosenthal) at the same "price, terms and conditions as any other party who is ready, willing and able." In the context so used, the word "alienate" cannot be given the construction argued by the defendants but the word "alienate" sandwiched in between the words "convey" and "transfer" has a restricted meaning and must be held to indicate a sale in the ordinary sense. If the parties had intended otherwise, they could readily have so stated in the instrument itself. This is particularly true when we consider the effect of agreeing to defendants' contention would be a forfeiture of this valuable property. For these reasons the second contention of defendants must fail. The plaintiff husband, having deposited $29,800 with the court, is entitled to performance of the option and reconveyance of the legal title. He is also entitled to an accounting of rents and profits from April 1, 1952, the date of the tender, as well as payment of any accrued rents and profits up to the date of the execution and delivery of the original deed.
While the option agreement was not signed by the defendant wife it was a part of one transaction. She could not under the circumstances have acquired by virtue of the deed an interest superior to the rights of the plaintiff optionee. Nor has she here objected to being made a party or raised any question other than the contentions decided.
For the reasons stated the cause is reversed for further proceedings consistent herewith.
ROBERTS, C.J., TERRELL, J., and PATTEN, Associate Justice, concur.