MIKE E. BOYSUN, Plaintiff and Respondent, *v.* JOHN C.
BOYSUN and TILLIE C. BOYSUN, Also Known as Tillie
Boysun, His Wife, Defendants and Appellants.

No. 10260.

Submitted December 5, 1961. Decided January 16, 1962.

368 P.2d 439.

Brattin, Habedank & Cumming, Wayne K. Cumming argued orally, Sidney, for appellants.

Larry Persson, County Atty., argued orally, Wolf Point, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

On March 27, 1953, a quitclaim deed involving farm land in McCone County was executed by the record owners, John C. Boysun and his wife Tillie, to Mike E. Boysun. In May 1958, Mike Boysun brought an action to quiet title to the land purchased from John and Tillie Boysun. The Boysuns answered alleging that the quitclaim deed was in reality a mortgage, and requested an accounting. The court, after hearing evidence, found for the plaintiff, Mike Boysun, and rendered judgment quieting his title to the property. The defendants have appealed.

The farm land involved in the quiet title action was mortgaged by John and Tillie in 1951 to one Eissinger for $4,400. A crop failure the following year resulted in delinquent taxes and a failure to pay the mortgage debt. Foreclosure was threatened by Eissinger. John attempted to borrow money from his brother Mike Boysun who refused him. Mike testified that he informed John the land was not worth any more than the encumbrances. Mike then offered to purchase the land, subject to the encumbrances, stating it was the only way to save the land. Thereafter the quitclaim deed in question was executed.

Mike's version of the circumstances surrounding the execution of the deed and the events thereafter is as follows: Mike claimed it was intended that he become the absolute owner of the land. However, it was his intention at the time he took the deed that if John would pay him the amounts that he paid on the Eissinger mortgage and the delinquent taxes he would either deed the land back to John or to any buyer John could find. The oral option to repurchase was to exist for a year or two.

Mike farmed the land in 1953 and 1954. He also paid the

taxes from 1951 through 1958. Mike testified that in the Spring of 1954, John informed him he had a buyer, who would offer $11,000 for the land. He also testified that he informed John he would meet that price and it was agreed that John would not receive his money in a lump sum but rather draw it when needed from Mike. Thereafter, John moved his family and belongings to North Dakota.

The fact that an agreement was entered into for Mike to buy the option to repurchase was corroborated by another party who was present at the transaction. In addition, Matt Oshanick testified that John approached him and asked if he would move him and his family to North Dakota, John at the time stating to Matt that he had sold his land. Subsequently John received from Mike certain sums of money for a total of $11,000.

On the other hand, John, whose testimony was supported by his wife, testified that the quitclaim deed was intended to be a mortgage. John stated that he never sold the land to Mike. John further testified that he never had a purchaser for $11,000 but he was merely finding out what the land was worth for security purposes. He testified that he left the land because his wife was sick and also because he was threatened if he did not move. He rebutted the testimony of the witness, who was present at the time the option to repurchase was exercised, and of Matt Oshanick by stating their testimony was false. He claimed the option money received from Mike was merely a loan.

The issue involved in this appeal is not solely whether the instrument executed by John and Tillie Boysun as grantors to Mike E. Boysun as grantee was intended as an absolute conveyance or as a mortgage. Rather, because of the position this court occupies in our judicial system, an additional issue is whether the evidence preponderates against the findings of the trial court. See Thomas v. Ball, 66 Mont. 161, 213 P. 597.

In Bouma v. Bynum Irrigation District, 139 Mont. 360, 364 P.2d 47, this court stated:

"Prior to an examination of this allegation of error, the

rules which govern review by this court in an equity appeal should be considered. Under section 93-216, R.C.M.1947, it is the duty of this court to review all questions of fact arising upon the evidence presented from the record. However, this statute has been subject to the judicial doctrine that this court in reviewing equity cases will hesitate to overturn findings of the trial court based upon substantial conflicting evidence which would justify an inference in favor of either side of the controversy. This rule is founded on the practicality that the trial court occupies an advantageous position. [Citing cases.]''

█ The ultimate question of whether a transaction was intended by the parties to be a mortgage or a sale rests on the intention of the parties at the time of the execution of the instrument, and to establish this intention the courts will examine the surrounding circumstances. See Rosenthal v. LeMay (Fla.1954), 72 So.2d 289, 44 A.L.R.2d 336.

█ It has been repeatedly held that the evidence to prove that a deed, absolute on its face, was intended to be a mortgage must be clear and convincing. Ross v. Automobile Ins. Co., 228 Iowa 668, 292 N.W. 813; Murray v. Butte-Monitor Tunnel Min. Co., 41 Mont. 449, 110 P. 497, 112 P. 1132. However, this rule is subject to some modification in situations where there is an option to repurchase or a conditional sale. The general rule is that if there is doubt whether a sale or a mortgage was intended, the court will be inclined to resolve the doubt in favor of the mortgage. See Gassert v. Bogk, 7 Mont. 585, 19 P. 281, 1 L.R.A. 240, also Murray v. Butte-Monitor Tunnel Min. Co., supra.

Appellants in this action rely heavily on the Murray case, supra. In that case this court listed a number of facts and circumstances which, if present, tend to confirm the view that the transaction was a mortgage and not a sale. These factors are as follows:

(a) The transaction in its inception had for its purpose a loan, not a sale.

(b) The grantor was in financial distress at the time of the transaction.

(c) The price which the grantee claims he paid for the property appears to have been grossly inadequate.

(d) According to grantee's own theory, the transaction did not amount to an absolute sale, but to a conditional sale; that is, a sale with an option to grantor to repurchase.

■ The appellants list the four factors and allege that they are all present in the instant case. We have some difficulty with this assertion. The third principle relied on in the Murray case is based on the inadequacy of the price the vendor received for his property. The adequacy of consideration must be tested by conditions existing at the time of the transaction. Chinn v. Llangollen Stable, 6 Cir., 109 F.2d 66.

In Titus v. Wallick, 114 N.J.Eq. 171, 168 A. 453, the court held that in order for evidence of a disparity between the consideration for a deed and the value of the land to be of weight, it is essential that there be a satisfactory showing of such disparity.

There is no evidence in the record to support appellants' allegation of a disparity between the purchase price and the value of the land at the time of sale. The only statement as to the value of the land at the time the deed was executed was the testimony of Mike Boysun. He stated the reason he would not loan money against the property was because it was not worth any more than what was against it.

■ In addition to the above-stated facts there are two elements present in the instant case which were not present in the Murray case. A deed, though absolute on its face, will be construed as a mortgage whenever it is shown that the instrument was intended to secure a debt. However, a debt must be shown to exist between the parties, as a mortgage is a mere incident of the debt. Magie v. Reynolds, 51 N.J. Eq. 113, 26 A. 150, Cawley v. Kelley, 60 Wis. 315, 19 N.W. 65.

■ In the Murray case there was testimony in the record

that the parties intended the money paid to be a loan and that a debt was created between the parties. In the instant case, Mike Boysun testified that the agreement between the parties was that any time John paid the money spent by Mike on the property he was to get the property back. John's testimony supports this theory that he received an option to repurchase. His testimony indicates that he felt no obligation to pay any money back to Mike, but rather he had an option to do so if desired.

The appellants place considerable emphasis on the fact that Mike Boysun while testifying stated that John had a year or two to *redeem* the property. They cite this to show that a mortgage was intended. We feel little weight should be given to such statements made by a layman. Especially in a situation such as the present wherein it is evident from the legal tangle of the parties that they knew little, if anything, about the law.

The second factor which is present in the instant case, which is absent from the Murray case, is the preponderant and inescapable fact that the option to repurchase was exercised. The testimony of two disinterested witnesses established the fact that in the Spring of 1954, John Boysun exercised his option to repurchase. In addition to exercising his option the testimony in the record establishes that he received his option price.

By reason of the facts of this case as stated above, we must affirm the judgment.

Because the accounting sought by appellants requires as a condition precedent that the deed be deemed a mortgage, we find it unnecessary to pass on the accounting issue.

The judgment is affirmed.

MR. JUSTICES DOYLE, ADAIR, CASTLES and JOHN C. HARRISON concur.